UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| BAILEY KAY BROWN | Plaintiff | |
| v. | | Case No. 3:25-cv-00349-RGJ |
| BIG M CHEVROLET, LLC, et al. | Defendant | |

**************

# Big M Chevrolet, LLC's[1] Memorandum in Support of Motion to Stay and Compel Arbitration

In the second of two retail installment contracts that plaintiff Bailey Brown signed—and under which she is now suing Big M on Dixie, LLC (Big M")—she agreed to arbitrate any claim she had with Big M, its employees or agents arising out of her purchase and, among other things, "any related transaction, occurrence, or relationship" between her and Big M.[2] Under the well-established federal policy favoring arbitration, Big M moves the Court to stay this action pursuant to 9 U.S.C. § 3 pending completion of the agreed arbitration.

Additionally, because Brown agreed that questions of arbitrability are to be decided by the arbitrator *and* because the arbitration agreement allows the party electing to arbitrate to designate the rules of the American Arbitration Association for the arbitration— which Big M hereby does—the question of the scope of the arbitration agreement and "arbitrability" of

---

[1] Big M on Dixie, LLC is the name of the limited liability company defendant, which has been sued under an assumed name.

[2] See "Arbitration Provision" at page four of the retail installment contract attached as Ex 1.

1

Brown's claims are for the arbitrator under well-established Sixth Circuit precedent.

**Applicable Facts**

Plaintiff Bailey Brown engaged in a two-month effort to replace her 2014 Audi Q5 with a Chevrolet SUV in 2024. During that process, one of the documents she signed was a May 28, 2024, retail installment contract and security agreement ("RISC") for 2022 Chevrolet Blazer, which is attached as exhibit 1. This very document underlies one of Bailey's claims against Big M.[3] the arbitration agreement provides, in pertinent part:

> You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "Claim" means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

See Ex. 1.

Brown signed this agreement—twice—and has judicially admitted as much.[4] The May 28 RISC shows Brown receiving $6200 in credit for her traded Audi, the same vehicle she offered in trade under an April 20, 2024, RISC by which she attempted to purchase a 2024 Chevrolet Equinox. That transaction floundered when Brown did not timely provide proof of the income stated on her credit application. She returned the Equinox and signed

---

[3] See verified complaint in 3:25-cv-00242-RGJ DN 1-1, PageID 11, at ¶ 57.
[4] Id.

the agreement for the Blazer, again crediting the value of the 2014 Audi Q5 against the purchase price.

Because Brown unquestionably agreed to arbitrate the Blazer transaction, Big M is entitled to a stay of proceedings pending that arbitration. Because Brown also agreed to arbitrate any claims that arise out of "any related transaction, occurrence or relationship" to the Blazer transaction, she is also agreed to arbitrate her claims arising out of the failed Equinox transaction, as it was only because of the failure of *that* transaction that the Blazer transaction even commenced. To the extent that Brown disagrees that the earlier transaction falls within the scope of her indisputable arbitration agreement, she is required to address that argument to the arbitrator.

## Argument

Federal courts approach questions of arbitrability with a healthy regard for the federal policy favoring arbitration. *Gavette v. United Wholesale Mortg., LLC*, No. 24-1557, 2025 U.S. App. LEXIS 2138, at *2 (6th Cir. Jan. 28, 2025) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). When considering a motion to stay proceedings and compel arbitrations under the Federal Arbitration Act, the court first must determine whether the parties agree to arbitrate, it then must determine if Congress intended any federal statutory claims to be non-arbitrable and determine if any non-arbitrable claims should be stayed. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Courts *sometimes* must determine the scope of the arbitration agreement,[5] but under the circumstances in this action, that is not the case.

---

[5] *Id.*

The first step is simple; not only does Brown's signature appear twice on the RISC containing the arbitration agreement, she pleaded that the parties entered into the RISC in a *verified* complaint.[6] Turning to statutory non-arbitrability, the Sixth Circuit specifically referenced the Truth and Lending Act in holding that statutory claims are equally subject to the District Court's duty to enforce arbitration agreements. *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000). District courts in this circuit regularly find TILA claims to be arbitrable[7] and Big M is unaware of any district court in the Sixth Circuit finding to the contrary.

As to the question of the scope of the arbitration agreement and the arbitrability of all of Brown's claim, the Sixth Circuit has made it absolutely clear that under the terms of Brown's arbitration agreement in the RISC, such questions are for the arbitrator. In *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020), the Sixth Circuit applied United States Supreme Court precedent confirming that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed . . . whether their agreement covers a particular controversy."[8]

Here, the parties have done exactly that. The arbitration agreement in Exhibit 1 provides "to the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration." This is exactly the sort of agreement that *Blanton* holds puts the question of scope in the hands of the arbitrator, as can be seen in

---

[6] See fn. 3.

[7] *Hendking v. Carvana LLC*, No. 1:22-CV-01777-JPC, 2022 U.S. Dist. LEXIS 200852, at *16 (N.D. Ohio Nov. 3, 2022).

[8] *Citing Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (cleaned up).

multiple decisions from this district applying *Blanton,* including *Creason v. Experian Info. Sols., Inc.*, 722 F. Supp. 3d 760, 764 (W.D. Ky. 2024), in which the court found nearly identical language "clearly and unmistakably" established that the scope of the arbitration agreement is for the arbitrator.

But even if the parties had not "clearly and unmistakably" agreed to leave the scope of the arbitration agreement in questions of arbitrability to the arbitrator, other language in the agreement requires the same conclusion. Under the RISC, the party electing arbitration— here, Big M— may choose the arbitration organization and its applicable rules from two choices, including the American Arbitration Association. Big M hereby elects the AAA and its rules as the organization and rules to govern its arbitration with Brown. As held in *Blanton*, the AAA rules establish that questions of arbitrability are for the arbitrator, and in *Blanton* the Sixth Circuit joined 11 of its sister circuits in holding that the incorporation of AAA rules itself provides "clear and unmistakable" evidence that the parties agreed to arbitrate "arbitrability."[9]

Brown has brought 12 counts against Big M and its employees (counting the completely duplicative conversion counts related to Brown's Audi as a single claim). All of them arise out of a lengthy transaction spanning two months during which Brown made repeated attempts to trade in her Audi for a Chevrolet SUV. The final question for this Court is whether any non-arbitrable claims should be stayed under 9 U.S.C § 3. Under the facts of this action, that decision will have to await the decision of the arbitrator as to the scope of the arbitration agreement. Pending any determination by the

---

[9] *See also Yates v. Royal Consumer Prods., LLC*, Civil Action No. 3:22-cv-075-CHB, 2022 U.S. Dist. LEXIS 145266, at *20 (W.D. Ky. Aug. 15, 2022).

arbitrator, this action is subject to the default application of 9 U.S.C § 3, requiring that the entire action be stayed pending arbitration under the agreement signed by Brown.

## Conclusion

Plaintiff Bailey Brown agreed to arbitrate any claims arising out her attempted purchase of the 2022 Chevrolet Blazer *and* any related transaction. Under the strong policy favoring arbitration and the clear authority in this circuit designating decisions regarding the scope of arbitrability to the arbitrator under the facts of this action, Big M respectfully requests the Court to stay this action pursuant to 9 U.S.C § 3 and compel Brown to proceed with arbitration before the AAA.

Respectfully submitted,

*/s/ John H. Dwyer, Jr.*
John H. Dwyer, Jr.
Cyrus G. Dutton IV
WILSON ELSER MOSKOWITZ EDELMAN
    & DICKER, LLP
100 Mallard Creek Rd., Suite 250
Louisville, KY  40207
Telephone: (502) 238-8500
Email: john.dwyer@wilsonelser.com
Email: cyrus.dutton@wilsonelser.com
*Counsel for Defendant Big M Chevrolet, LLC.*